1

2

3

4

5

6                        UNITED STATES DISTRICT COURT
                        EASTERN DISTRICT OF WASHINGTON
7

8   TABATHA NEU,                  )
                                  )  No. CV-07-0030-CI
9            Plaintiff,           )
                                  )  ORDER GRANTING DEFENDANT'S
10  v.                            )  MOTION FOR SUMMARY JUDGMENT
                                  )
11  MICHAEL J. ASTRUE, Commissioner )
    of Social Security,           )
12                                )
             Defendant.           )
13                                )
                                  )
    _____  )
14

15        BEFORE THE COURT are Plaintiff's Motion for Summary Judgment

16  (Ct. Rec. 15) and Defendant's Motion for Summary Judgment (Ct. Rec.

17  18), noted for hearing without oral argument on August 20, 2007.

18  (Ct. Rec. 14.)  Attorney Clifford King B'Hymer represents Plaintiff;

19  Special Assistant United States Attorney Richard M. Rodriguez

20  represents the Commissioner of Social Security ("Commissioner").

21  The parties have consented to proceed before a magistrate judge.

22  (Ct. Rec. 10.)   After reviewing the administrative record and the

23  briefs filed by the parties, the court **GRANTS** Defendant's Motion for

24  Summary Judgment. **(Ct. Rec. 18.)**  Plaintiff's Motion for Summary

25  Judgment is **DENIED.  (Ct. Rec. 15.)**

26                              **JURISDICTION**

27        Plaintiff initially protectively applied for Social Security

28  Income ("SSI") benefits in November of 2001.  (Tr. 81-83.)  The

application was denied initially and on reconsideration.  (Tr. 33-34.)  Plaintiff did not appeal.  Plaintiff protectively filed a second application for SSI on June 16, 2003.  (Tr. 84-85.)  She alleged disability since October 10, 2001, due to limitations in lifting, standing, use of right hand, panic attacks, and depression. (Tr. 46, 92.)  The application was denied initially (Tr. 46-49) and on reconsideration (Tr. 51-52).  Plaintiff appeared before Administrative Law Judge (ALJ) Paul Gaughen on July 21, 2005.  The ALJ heard the testimony of Plaintiff and Jean Schoppe, Plaintiff's mother.  (Tr. 755-784.)  The ALJ held a supplemental hearing on February 27, 2006. (Tr. 787-810.) Medical expert Jay Toews, Ed. D., and vocational expert (VE) Tom Moreland testified.  The ALJ issued a decision on April 28, 2006, finding that Plaintiff was not disabled. (Tr. 16-32.)  The Appeals Council received additional evidence (Tr. 736-751) and denied a request for review on December 11, 2006.  (Tr. 9-11.)  Therefore, the ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).  Plaintiff filed this action for judicial review pursuant to 42 U.S.C. § 405(g) on February 8, 2007. (Ct. Rec. 7.)

### STATEMENT OF FACTS

The facts have been presented in the administrative hearing transcript, the ALJ's decision, the briefs of both Plaintiff and the Commissioner and will only be summarized here.

Plaintiff was 35 years old on the amended onset date, and 37 on the date of the ALJ's decision.  (Tr. 101.)  She earned a GED and completed some college courses.  (Tr. 98, 519.)  Plaintiff last worked as a food server and food preparer in 2001.  (Tr. 92-93.)

1  She lives with her mother, does not drive, and usually goes to
2  church weekly.  (Tr. 757-760.)  Plaintiff walks the dog, cooks a
3  little, does laundry, and chats with her daughter online. (Tr. 758,
4  761, 767, 775.)  She takes Excedrin for daily headaches, experiences
5  back pain, and drops things in her right hand.  (Tr. 763, 765-766.)
6  Plaintiff testified that she had not taken illegal drugs for two
7  years, meaning since July 15, 2003.  (Tr. 762.)  Plaintiff does not
8  challenge the ALJ's findings with respect to her physical
9  impairments, which were found non-severe.

10                    **SEQUENTIAL EVALUATION PROCESS**

11      The Social Security Act (the "Act") defines "disability" as the
12  "inability to engage in any substantial gainful activity by reason
13  of any medically determinable physical or mental impairment which
14  can be expected to result in death or which has lasted or can be
15  expected to last for a continuous period of not less than twelve
16  months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Act also
17  provides that a Plaintiff shall be determined to be under a
18  disability only if any impairments are of such severity that a
19  Plaintiff is not only unable to do previous work but cannot,
20  considering Plaintiff's age, education and work experiences, engage
21  in any other substantial gainful work which exists in the national
22  economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).  Thus, the
23  definition of disability consists of both medical and vocational
24  components.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir.
25  2001).

26      The Commissioner has established a five-step sequential
27  evaluation process for determining whether a person is disabled.  20
28  C.F.R. §§ 404.1520, 416.920.  Step one determines if the person is

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 3

engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). If not, the decision maker proceeds to step two, which determines whether Plaintiff has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If Plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares Plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404, Subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, Plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents Plaintiff from performing work which was performed in the past. If a Plaintiff is able to perform previous work, that Plaintiff is deemed not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, Plaintiff's residual functional capacity ("RFC") assessment is considered. If Plaintiff cannot perform this work, the fifth and final step in the process determines whether Plaintiff is able to perform other work in the national economy in view of Plaintiff's residual functional capacity, age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon Plaintiff to establish

a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once Plaintiff establishes that a physical or mental impairment prevents the performance of previous work. The burden then shifts, at step five, to the Commissioner to show that (1) Plaintiff can perform other substantial gainful activity, and (2) a "significant number of jobs exist in the national economy" which Plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

Plaintiff has the burden of showing that drug and alcohol addiction ("DAA") is not a contributing factor material to disability. *Ball v. Massanari*,, 254 F.3d 817, 823 (9th Cir. 2001). The Social Security Act bars payment of benefits when drug addiction and/or alcoholism is a contributing factor material to a disability claim. 42 U.S.C. §§ 423(d)(2)(C) and 1382(a)(3)(J); *Sousa v. Callahan*, 143 F.3d 1240, 1245 (9th Cir. 1998). If there is evidence of DAA and the individual succeeds in proving disability, the Commissioner must determine whether the DAA is material to the determination of disability. 20 C.F.R. §§ 404.1535 and 416.935. If an ALJ finds that the claimant is not disabled, then the claimant is not entitled to benefits and there is no need to proceed with the analysis to determine whether substance abuse is a contributing factor material to disability. However, if the ALJ finds that the claimant is disabled, then the ALJ must proceed to determine if the claimant would be disabled if he or she stopped using alcohol or drugs. *Bustamante v. Massanari*, 262 F.3d 949 (9th Cir. 2001).

### STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 5

1  Commissioner's decision.  42 U.S.C. § 405(g).  A court must uphold

2  the Commissioner's decision, made through an ALJ, when the

3  determination is not based on legal error and is supported by

4  substantial evidence.  *See Jones v. Heckler*, 760 F.2d 993, 995 (9th

5  Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

6  "The [Commissioner's] determination that a plaintiff is not disabled

7  will be upheld if the findings of fact are supported by substantial

8  evidence."  *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983)

9  (*citing* 42 U.S.C. § 405(g).  Substantial evidence is more than a

10 mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th

11 Cir. 1975), but less than a preponderance.  *McAllister v. Sullivan*,

12 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of*

13 *Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988).

14 Substantial evidence "means such evidence as a reasonable mind might

15 accept as adequate to support a conclusion."  *Richardson v. Perales*,

16 402 U.S. 389, 401 (1971) (citations omitted).  "[S]uch inferences

17 and conclusions as the [Commissioner] may reasonably draw from the

18 evidence" will also be upheld.  *Mark v. Celebrezze*, 348 F.2d 289,

19 293 (9th Cir. 1965).  On review, the court considers the record as

20 a whole, not just the evidence supporting the decision of the

21 Commissioner.  *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989)

22 (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

23     It is the role of the trier of fact, not this court, to resolve

24 conflicts in evidence.  *Richardson,* 402 U.S. at 400.  If evidence

25 supports more than one rational interpretation, the court may not

26 substitute its judgment for that of the Commissioner.  *Tackett*, 180

27 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

28 Nevertheless, a decision supported by substantial evidence will

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 6

still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

### ALJ'S FINDINGS

The ALJ found at step one that Plaintiff has not engaged in substantial gainful activity during any time at issue. (Tr. 18.) At step two, the ALJ found that the medical evidence established that Plaintiff suffered from the severe impairments of major depressive disorder and drug and alcohol dependence. (Tr. 18.) At step three, the ALJ found that Plaintiff's impairments, including substance abuse, meet section 12.09 of 20 C.F.R. Part 404, Subpart P, Appendix I (20 C.F.R. § 416.920(d)). (Tr. 26.) Because Plaintiff's impairments met one of the Listings impairments, the ALJ found Plaintiff disabled. (Tr. 26.) The ALJ then considered whether, absent substance abuse, Plaintiff's remaining limitations would cause more than a minimal impact on her ability to perform basic work activities. (Tr. 26.) He concluded that if substance abuse stopped, Plaintiff would still experience major depression that would interfere with understanding and memory, social interaction, and adaptation, but the impairment or combination of impairments does not meet or medically equal a Listings impairment. (Tr. 26-27.) The ALJ found Plaintiff less than completely credible. (Tr. 28.) The ALJ considered Plaintiff's credibility when he weighed the

1   medical evidence and determined Plaintiff's RFC. (Tr. 28.) The ALJ
2   found that, absent substance abuse, Plaintiff has the RFC to
3   perform a range of medium work with some limitations caused by
4   mental impairments. (Tr. 27-31.) At step four, the ALJ found that,
5   absent substance abuse, Plaintiff could perform her past relevant
6   work as a laminator. (Tr. 31.) The ALJ found that because
7   Plaintiff would not be disabled if she stopped abusing substances,
8   substance abuse disorder is contributing factor material to the
9   disability determination. (Tr. 31.) Accordingly, the ALJ
10  determined at step four of the sequential evaluation process that
11  Plaintiff was not disabled within the meaning of the Social Security
12  Act because she can perform her past relevant work if there is no
13  substance abuse. (Tr. 31-32.)

14                              **ISSUES**

15      Plaintiff contends that the Commissioner erred as a matter of
16  law. Specifically, she argues that the ALJ erred when he 1) weighed
17  the medical evidence; 2) determined that her impairments did not
18  meet or equal a Listings impairment; 3) assessed Plaintiff's RFC;
19  and 4) found that substance abuse was a contributing factor material
20  to disability. (Ct. Rec. 15, Att. at 10-16.)

21      The Commissioner opposes the Plaintiff's motion and asks that
22  the ALJ's decision be affirmed. (Ct. Rec. 19 at 12.)

23                            **DISCUSSION**
24  **A.   Weighing Medical Evidence**

25      In social security proceedings, the claimant must prove the
26  existence of a physical or mental impairment by providing medical
27  evidence consisting of signs, symptoms, and laboratory findings; the
28  claimant's own statement of symptoms alone will not suffice. 20

C.F.R. § 416.908. The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms.  20 C.F.R. § 416.929.  Once medical evidence of an underlying impairment has been shown, medical findings are not required to support the alleged severity of symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991).

A treating or examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004).  If the treating or examining physician's opinions are not contradicted, they can be rejected only with "clear and convincing" reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  If contradicted, the ALJ may reject and opinion if he states specific, legitimate reasons that are supported by substantial evidence. *See Flaten v. Secretary of Health and Human Serv.*, 44 F.3d 1453, 1463 (9th Cir. 1995).

Plaintiff contends that the ALJ erred by giving greater weight to the opinion of the testifying medical expert than to the opinions of six treating and examining psychologists, and by failing to give specific and legitimate reasons supported by substantial evidence for discrediting the opinions of these mental health professionals. (Ct. Rec. 15, Att. at 10-14.) The Commissioner responds that the ALJ gave specific and legitimate reasons, supported by substantial evidence, for rejecting the opinion of Rebecca Alexander, Ph. D. The Commissioner further responds that the ALJ properly weighed the opinion of the testifying expert and properly resolved the conflicting medical and other evidence.  (Ct. Rec. 19 at 12-14.)

The ALJ considered the opinion of treating psychologist Lee Hendrickson, ARNP, Ph.D.   Dr. Hendrickson noted on May 23, 2003

(about five months prior to the amended onset date of October 1, 2003), that Plaintiff had been in a relationship with a "felony criminal" and was using amphetamines. (Tr. 452.) She was clean and sober at the time of the appointment and had been putting in job applications. (Tr. 452.) Plaintiff opined that her psychotropic medications are much more effective when she is clean and sober. (Tr. 452.) On June 19, 2003, Dr. Hendrickson noted that "crystal crank" caused Plaintiff to be seen in a hospital emergency room for a "severe paranoid reaction," although Plaintiff initially described being given Ativan in the ER for extreme anxiety caused by being given a cortisone-based medication. (Tr. 453.) The ER record of May 31, 2003, shows that when she was admitted Plaintiff was "quite paranoid"; she complained of a racing heart and nausea; eventually, Plaintiff admitted that she had injected methamphetamine yesterday. (Tr. 463.) ER physician Linden Bishop, M.D., notes that the "patient has been using methamphetamine apparently significantly over the last several months, possibly six months." (Tr. 463.) Dr. Bishop observed multiple injection sites on both arms. (Tr. 464.) He diagnosed acute anxiety secondary to methamphetamine overdose. (Tr. 464.)

   Also on June 19, 2003, Dr. Hendrickson noted that Plaintiff appeared "less than contrite" in expressing remorse for "having relapsed with street drugs yet again." (Tr. 453.) He noted:

> I reviewed with the patient the fact that her anxiety disorder is very much exacerbated and destabilized by the use of illicit substances, in spite of her protestation that she has never been to the ER before with this kind of reaction. Also, I explained there really is no knowing what she is ingesting with illicit substances. Her therapist has recommended that we extend her DSHS grant for another 60-days, and has arranged for a substance abuse evaluation in a week, with the idea of [Plaintiff] seeing someone for the substance abuse treatment as well

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 10

as her anxiety disorder.  She is telling me today that she is having panic attacks "at a rate of one to two a week," previously only one a month.  I suspect that this exacerbation is largely due to the recent relapse with illicit substances, since she was relatively stable prior to that.

(Tr. 453.)

On July 10, 2003, Dr. Hendrickson diagnosed major depression, moderate and recurring, amphetamine abuse, with dependent and borderline personality.  (Tr. 455.)  He opined that Plaintiff's levels of anxiety and depression would be manageable with medication and therapy if she sustained 60 days of abstinence from substance abuse.  (Tr. 455.)  Dr. Hendrickson opined that substance abuse greatly exacerbates Plaintiff's other diagnosed conditions.  (Tr. 456.)  He expected that Plaintiff would be severely impaired in two areas of functioning, marked in one, and moderately impaired in four areas, for a maximum period of twelve months.  (Tr. 456-457.)

Five days later, on July 15, 2003, Plaintiff was seen in the ER for trying to pull the "bugs" off of her, at times with tweezers and possibly a knife.  Plaintiff believed that "bugs" were causing itching and a skin rash.  (Tr. 467-468.)  Old scars indicated that this may have gone on for some time.  (Tr. 467.)  Plaintiff admitted she that took methamphetamine and opiates yesterday, although she did not admit to taking opiates until confronted with test results.  (Tr. 467.)  The ER physician diagnosed opiate and methamphetamine abuse and factitious dermatitis.  (Tr. 468.)  On July 18, 2003, Tuck Ainge, PA-C, noted in follow-up that Plaintiff was to begin intensive outpatient treatment on July 21, 2003.  (Tr. 476.)

The ALJ notes that Plaintiff was seen in the ER on other occasions.  (Tr. 24.)  On February 22, 2003, Linden Bishop, M.D.,

saw Plaintiff for a right hand fracture that happened after she hit a wall with her hand.  (Tr. 458.)  Plaintiff was seen in the ER about two months later, on April 24, 2003, after she punched a car with her right hand.  (Tr. 461.)

Plaintiff contends that the ALJ did not properly weigh the January 8, 2002, opinion of examining psychologist James R. Phillips, Ph.D.  Dr. Phillips noted that Plaintiff drove herself 90 miles round trip to the appointment.  (Tr. 278.)  Plaintiff's "(a)lleged disabilities are 'depression.'" (Tr. 278.)  Plaintiff had problems with depression since childhood, began counseling at age thirteen, and experienced an increase in her depressive symptoms during the past year.  (Tr. 278.)  Plaintiff indicated that she saw Kay Anderson for weekly counseling and had taken antidepressants for 8 to 9 years.  (Tr. 278.)  She described her mood as gray and gloomy.  She had problems with memory and concentration, low energy, loss of interest in past pleasurable activities, anhedonia, difficulty sleeping, and poor appetite. (Tr. 278-279.)  Plaintiff reported she was not using alcohol or illicit drugs and became clean and sober about six years ago.  (Tr. 279.)  The ALJ notes that Plaintiff reported attending both inpatient and outpatient substance abuse treatment.  (Tr. 19.)  Dr. Phillips diagnosed a depressive disorder NOS with antisocial features and a current GAF of 55.[1]  (Tr.

---

[1]A Global Assessment of Functioning of 51-60 indicates some moderate symptoms (*e.g.*, flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (*e.g.*, few friends, conflicts with peers or co-workers).  DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 12

280.)

The ALJ considered Dr. Phillips' report and noted that on January 22, 2002 (two weeks after Dr. Phillips' evaluation), treating therapist Kay Anderson observed:

> Dr. Blankenship [Beth Blankenship, PA-C] had seen [her] behavior as drug seeking and cut her off pain pills. She is reported to have been noncompliant with her treatment. [Plaintiff's] therapist also addressed concern over her possible drug use and that she might need detox and there is no evidence of a mental breakdown as she had been coherent in justifying, rationalizing, and blaming only one hour earlier.

(Tr. 19, referring to Tr. 518, 644.) The ALJ points out Ms. Anderson's notation, also on January 22, 2002, that Plaintiff tried to get out of work and get on SSI payments. (Tr. 29.) The ALJ considered Ms. Anderson's statement that Plaintiff was non-compliant with treatment because she refused all treatment options and, as a result, Ms. Anderson closed her file. (Tr. 29, 518.)

The ALJ considered the records of Plaintiff's therapist Lynn-Marie Peashka, APRN-BC:

> While the claimant again complained on December 2, 2005, of changes in her eating patterns, depression, anxiety, panic attacks, sleep patterns, relationships and thoughts which she cannot get out of her head. . . . The therapist notes that it is interesting that in spite of the fact that the claimant is reporting these changes, she drew a smiley face at the bottom of her pre-visit questionnaire. The therapist also states that the claimant was the most clear and focused the therapist has seen her since she began seeing her. The therapist felt the claimant is improving and reaching a point where she is possibly developing some concern about termination of services, particularly her therapeutic interactions.

(Tr. 30, referring to Exhibit 59F at Tr. 707-708.)

The ALJ properly gave more weight to the opinions of treating professionals Blankenship, Hendrickson, Anderson and Peashka than

DISORDERS 4th Ed. (DSM-IV), at 32.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 13

to examining psychologist Dr. Phillips' single evaluation.

Plaintiff alleges that the ALJ did not properly weigh the opinion of examining psychologist Eileen Wright, Ph. D.   The ALJ summarized Dr. Wright's report based on her evaluation conducted March 6 and March 20, 2002:

> The claimant denies [to Dr. Wright] any use of drugs or alcohol and has received no treatment for drug or alcohol use.  She is reported to be moderately cooperative and on occasion oppositional to resistant.  Her responses are noted to be often flippant, indifferent and evasive.  Her mood was depressed and anxious with a restricted affect that was often inappropriate and flippant.  She acknowledges panic attacks at least once a week, lasting 30 to 60 minutes each time.  She often thinks of suicide and cries every day some times more than once. . . . Upon mental status examination, the claimant is reports [sic] to have limited verbal skills and memory and impaired concentration. . . .  It is noted that her medication is necessary for her best functioning.  Dr. Wright diagnosed the claimant with panic disorder without agoraphobia and major depressive disorder, single episode, severe, without psychotic features.

(Tr. 19-20, referring to Tr. 296-301.)

The ALJ observes that, on April 3, 2002, psychiatrist Michael Reznicek, M.D., stated Plaintiff is "noted to have gotten high one month ago," meaning in March of 2002, at or near the time of Dr. Wright's assessment.  (Tr. 29, referring to Exhibit 15F.)

Plaintiff alleges that the ALJ failed to properly credit the opinion of Richard Gallaher, Jr., Ph.D., citing reports on February 11, 2002 (Tr. 310) and June 21, 2006.  (Tr. 741-751.)  The evaluation dated February 11, 2002, signed by treating therapist Dee Davison and Dr. Gallaher, indicates that Plaintiff is a new client. (Tr. 312.)  Plaintiff was "kicked out" of substance abuse treatment in 1995.  (Tr. 309.)  An IQ test was recommended.  (Tr. 309-310.) Plaintiff was assessed with marked impairments with respect to depressed mood and physical complaints, moderately impaired in the

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 14

ability to verbally express anxiety or fear, and moderately impaired overall. (Tr. 310.) Plaintiff's diagnosis was adjustment disorder with depression and anxiety and dependent personality. There was no indication of alcohol or drug abuse; Plaintiff stated she last used "crank 7 years ago," and denied substance abuse ("SA") issues. (Tr. 310.) Plaintiff was assessed as severely impaired in the ability to exercise judgment and make decisions, and markedly impaired in the ability to understand complex instructions, care for personal hygiene, and respond appropriately to workplace pressures. (Tr. 311.) The report reflected she stated "she has no energy to do anything - forces self to take a shower - unable to make decisions." (Tr. 311.) The opinion was medication could help with anxiety, sleeplessness and depression, and therapy should be helpful. The expected maximum period of impairment is one year. (Tr. 311-312.)

In a second evaluation, dated June 21, 2006 (about two months after the ALJ's decision), Dr. Gallaher diagnosed bipolar disorder I, most recent depressed, PTSD, and a cognitive disorder nos. (Tr. 741-751.) The attempt to diagnose a psychiatric condition years after the fact (in this case, three years after onset and two months post-decision) lacks sufficient probative value to have any evidentiary weight. *See Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) ("after-the-fact psychiatric diagnoses are notoriously unreliable").

The ALJ properly considered Plaintiff's credibility when he weighed the conflicting medical evidence. The ALJ found Plaintiff less than completely credible (Tr. 28), a finding that is not challenged. In reaching this conclusion, the ALJ observed: (1) Plaintiff's physical complaints are not supported by objective

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 15

medical evidence. Plaintiff complained that despite carpal tunnel surgery on her right hand, she still drops things and has trouble picking them up. The August 22, 2003, examination by Vivian Moise, M.D., supports the ALJ's finding that there is no underlying physical impairment which could reasonably be expected to produce these symptoms. (2) Plaintiff's statements are contradicted by treating professionals. Plaintiff said that she had to be hospitalized for an anxiety attack; however, the ALJ notes her treating therapist observed no evidence of a mental breakdown based on Plaintiff's coherence only an hour earlier. (Tr. 29.) (3) Plaintiff failed to follow through with prescribed treatment. The ALJ notes that on August 19, 2005, Plaintiff is "noted to have not been taking her medications regularly." (Tr. 30.) The ALJ also pointed out that Plaintiff was discharged from treatment by her therapist for refusing all treatment options. (Tr. 29.)

It is the province of the ALJ to make credibility determinations. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). However, the ALJ's findings must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Once the claimant produces medical evidence of an underlying impairment, the ALJ may not discredit his testimony as to the severity of an impairment because it is unsupported by medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the

claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).   Factors the ALJ may properly consider include claimant's reputation for truthfulness, prior inconsistent statements, unexplained failure to seek medical care or to follow a prescribed course of treatment, and the claimant's activities of daily living.   *See Thomas v. Barnhart*, 278 F.3d 947, 958-959 (9th Cir. 2002).

The ALJ's credibility assessment, unchallenged on review, is supported by the record and free of legal error.

The ALJ also considered the opinion of testifying expert Jay Toews, Ed. D., when he weighed the medical evidence.   (Tr. 24-27.) Dr. Toews reviewed the medical records.   (Tr. 790.)   He opined that, prior to October or November of 2003, Plaintiff's primary problem was amphetamine dependence.   (Tr. 792.)   Dr. Toews observed that since about October of 2003, Plaintiff was in very early remission; she had no cognitive disorder as evidenced by a normal mental status exam.   Plaintiff was described as "bright and articulate."   A Shipley test result indicated an average IQ.   (Tr. 793.)   Dr. Toews pointed out Plaintiff's primary diagnosis in November of 2003 by Albert Crook, D.O., was major depressive disorder and a panic disorder without agoraphobia.   Dr. Crook opined that Plaintiff made "considerable improvement" when drug free; he opined Plaintiff could work at least part-time and eventually full-time.   (Tr. 793, referring to Tr. 537.)   Dr. Toews noted that records show Plaintiff is rather histrionic.   He assessed major depressive disorder.   (Tr. 794.)   When Plaintiff takes prescribed medication and is free of substance abuse, Dr. Toews opined that her depression should be fairly stable.   (Tr. 794.)   The ALJ notes that

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 17

Dr. Toews assessed the following RFC if Plaintiff is not using drugs:

> [I]t is Dr. Toews' opinion that the claimant's functional limitations as a result of her psychological disorders, excluding substance abuse, would exhibit a mild degree of limitation with regards to her activities of daily living. She would exhibit moderate to marked limitations in maintaining social functioning and mild to moderate limitations in maintaining concentration, persistence or pace. The claimant would exhibit no episodes of decompensation. With further specificity, the claimant would be moderately limited in understanding and remembering detailed instructions; in completing a normal workday and workweek without interruptions from psychologically based symptoms and in performing at a consistent pace without an unreasonable number and length of rest periods in [a] complex job; in accepting instructions and responding to criticism from supervisors; and in responding appropriately to changes in the work setting.

(Tr. 25-26, referring to Tr. 796.)    Dr. Toews opined that the opinion of Rebecca Alexander, Ph.D., (Tr. 566-572) was entitled to little weight because other evidence indicates Plaintiff is bright and relatively articulate.  (Tr. 795.)

Plaintiff contends that the ALJ failed to properly weigh Dr. Alexander's August 20, 2004, opinion. Based on test results, Dr. Alexander assessed mild mental retardation.  (Tr. 571.)  The ALJ points out Dr. Crook's note in November of 2003 that Plaintiff completed credits in the Impact Program at Walla Walla Community College with a high grade point average (3.74) and re-enrolled for a full credit hour load.  (Tr. 25-26.)  The ALJ notes that Dr. Alexander apparently relied quite heavily on "the subjective report of symptoms and limitations provided by the claimant and seemed to critically accept as true most, if not all, of what the claimant reported."  Yet, the ALJ notes, there are good reasons for questioning the reliability of Plaintiff's subjective complaints. (Tr. 26.)  These are specific and legitimate reasons to discredit

1  Dr. Alexander's opinion.

2      The ALJ properly relied on the opinions of treating and

3  examining professionals Hendrickson, Reznicek, Bishop, Blankenship,

4  Anderson, Crook, and Moise when he considered the opinions of

5  examining psychologists Phillips, Wright, Gallaher, and Alexander.

6  Because Dr. Toews' opinion is supported by other evidence in the

7  record, specifically the records of treating and examining

8  professionals, the ALJ appropriately considered Dr. Toews' opinion

9  as well.  The ALJ was not required to discuss the opinions of the

10  three other named psychologists because they are all consulting

11  agency psychologists (John McRae, Ph.D., at Tr. 282; James Bailey,

12  Ph.D., at Tr. 512, and Michael Brown, Ph.D., at Tr. 512.)

13      The ALJ's assessment of the medical evidence is supported by

14  the record and free of legal error.

15  **B.    Listings and DAA analysis**

16      Plaintiff contends that the ALJ erred when he found that

17  Plaintiff's mental impairments did not meet or equal a Listings

18  impairment, specifically, by failing to properly credit Dr.

19  Alexander's report of August 20, 2004.  (Ct. Rec. 15 at 13-15.)  The

20  Commissioner responds that the ALJ found Plaintiff's impairments met

21  Listing 12.09 when Plaintiff's substance addiction disorder is

22  considered with her other mental impairments, but, without the

23  effects of substance abuse, Plaintiff's remaining impairments would

24  not prevent her from performing past relevant work.  (Ct. Rec. 19 at

25  15.)

26      The weight given by the ALJ to Dr. Alexander's opinion has been

27  addressed and found to be without error.  Accordingly, Plaintiff's

28  argument that Dr. Alexander's assessed limitations meet a Listing

1  level of impairment is unsupported by the record.

2      To the extent Plaintiff argues that the ALJ's DAA analysis is

3  flawed, the Commissioner responds that the record fully supports the

4  ALJ's findings.   (Ct. Rec. 19 at 15.)     Specifically, the

5  Commissioner argues that the record shows (1) substance abuse was

6  the basis for Plaintiff's mental impairments (from October or

7  November of 2003 and earlier); (2) when Plaintiff was not abusing

8  substances and compliant with prescribed medication "she was

9  consistently noted as being able to function"; and (3) whenever

10 Plaintiff exhibited a decline in functioning it was related to her

11 use of drugs. (Ct. Rec. 19 at 15-16.)

12     The record supports the Commissioner's argument.  Plaintiff's

13 therapist Dee Davison, M. Ed., noted on August 22, 2002, that

14 Plaintiff was doing very well and had completed 18 college credits,

15 was enrolled for 15 credits in the fall, and had a goal of earning

16 an Associate of Arts degree.  (Tr. 519.)  In October and November of

17 2002, Plaintiff reported to Dr. Crook that she was feeling better

18 and her mood was "good most of the time now." (Tr. 522-523.)  On

19 October 25, 2002, Jayme Mackay, M.D., noted Plaintiff's status as a

20 full-time student.  (Tr. 470.)  Plaintiff told Dr. Hendrickson on

21 May 23, 2003 (about four months before the amended onset date), that

22 her medications were much more effective when she was clean and

23 sober, and after two days of sobriety she was completing job

24 applications.  (Tr. 452.)  Dr. Hendrickson noted less than a month

25 later that "crystal crank" caused an emergency room hospitalization

26 for a "severe paranoid reaction."  (Tr. 453.)  In July of 2003,

27 David Kendrick, M.D., stated that, coming off of methamphetamine

28 five days ago, Plaintiff cut both her forearms with a box knife

because she thought bugs were crawling on her. (Tr. 482.)  Dr. Moise's physical exam on August 22, 2003, was highly consistent with pain and weakness caused by purely psychiatric impairment. (Tr. 496.)  Dr. Moise opined that Plaintiff may need an increase in psychiatric medication. (Tr. 497.)  On October 8, 2003, Plaintiff told Dr. Crook she had been clean for 84 days and was "feeling really good." (Tr. 534.)  About a month later, Dr. Crook noted that Plaintiff has made considerable improvement when she is drug free. (Tr. 537.)  He opined that Plaintiff should be able to work part-time, and perhaps eventually full time, and that Dee Davison noted Plaintiff has done well in school when she was substance free. (Tr. 537.)

The record reveals that Plaintiff does well when she is not suffering from substance abuse, including earning good grades in college courses.  The record reveals that Plaintiff's substance abuse has led to psychiatric hospitalizations for severe paranoia (induced by methamphetamine overdose) and cutting herself (also induced by amphetamine abuse).  The ALJ conducted the *Bustamante* analysis and found that, with substance abuse, Plaintiff's impairments meet Listings 12.09.  He then considered whether Plaintiff's DAA was a materially contributing factor to the disability determination.  To make this determination, the ALJ considered how Plaintiff functions with the impairments present when DAA is excluded.  After conducting the required DAA analysis, the ALJ determined that, because substance abuse is a materially contributing factor to Plaintiff's disability, benefits are barred. The ALJ's analysis is supported by the record and free of legal error.

**C.   Residual Functional Capacity Assessment**

Plaintiff argues that the ALJ erred by failing to include all of her impairments in his RFC determination. (Ct. Rec. 15, Att. at 10-13.)   Defendant responds that the ALJ included all of the impairments established by competent evidence and those existing after excluding substance abuse.  (Ct. Rec. 19 at 16-17.)

Resolving conflicts in evidence is reserved for the ALJ, not the court.  As noted, the ALJ properly weighed the medical and other evidence.  The RFC finding, based on the ALJ's proper assessment of the medical evidence, is supported by the record and free of legal error.

**D.   VE's testimony**

Plaintiff alleges the ALJ erred because when Dr. Toews assessed limitations were presented to the VE, the expert opined that there are no jobs a person with Plaintiff's limitations could perform. (Ct. Rec. 15, Att. at 12-13.)

The ALJ assessed the following mental RFC if there is no substance abuse: Plaintiff could not do work with other than perfunctory social interaction or requiring mastery and application of complex or detailed information.  (Tr. 27.)  Plaintiff should avoid work "where there is frequent changing in the work setting." (Tr. 27.)  The ALJ noted that Dr. Toews assessed (absent DAA) mild limitations in the activities of daily living, moderate-to-marked limitations in maintaining social functioning, mild to moderate limitations in maintaining concentration, persistence or pace, and no episodes of decompensation. (Tr. 27, referring to Tr. 796.)  The ALJ asked Dr. Toews if Plaintiff's assessed difficulty with persistence, concentration or pace applied to performing simple,

repetitive tasks.  Dr. Toews responded that the restrictions would not apply.  (Tr. 796.)  The hypothetical that the ALJ asked the VE included restricting the worker to only perfunctory social interaction with co-workers and/or the public, no work requiring mastery and application to work of complex or detailed information, and no frequent changes in the work setting or procedures.  (Tr. 806.)  The ALJ's hypothetical included the impairments established by the medical evidence.  The ALJ's step four determination is supported by the record and free of legal error.

### CONCLUSION

Having reviewed the record and the ALJ's conclusions, this court finds that the ALJ's determination is supported by substantial evidence and free of legal error.  Accordingly,

**IT IS ORDERED:**

1.  Defendant's Motion for Summary Motion (**Ct. Rec. 18**) is **GRANTED**.

2.  Plaintiff's Motion for Summary Judgment **(Ct. Rec. 15)** is **DENIED**.

The District Court Executive is directed to file this Order, provide copies to counsel for Plaintiff and Defendant, enter judgment in favor of Defendant, and **CLOSE** this file.

DATED October 22, 2007.


_____S/ CYNTHIA IMBROGNO_____
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 23